## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3464 | **DATE** | 9/28/2001 |
| **CASE TITLE** | Sam Mangialardi v. U.S.A. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons we deny the position paper of petitioner Sam Mangialardi as to the issue remaining in his petition for habeas corpus. Therefore, Mangialardi's petition for writ of habeas corpus [1-1] is denied. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 28 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 35 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 SEP 28 PM 3:36 | | |
| TSA | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SAM MANGIALARDI, )
)
Petitioner, )
) No. 97 C 3464
v. )
) Judge Wayne R. Andersen
UNITED STATES OF AMERICA, )
)
Respondent. )

## MEMORANDUM OPINION AND ORDER

This case is before the court on the position paper of petitioner entitled "Petitioner's Position As To Remaining Issues Post-Waiver Ruling." For the reasons stated below, we deny petitioner's position paper and, hence, deny his petition for writ of habeas corpus.

### BACKGROUND

On March 1, 1994, Sam Mangialardi was charged in a 16 count superseding indictment. He was charged with racketeering, aiding and abetting a drug conspiracy, extortion, money laundering, theft of government funds, civil rights conspiracy, filing false tax returns, and witness tampering.

Mangialardi pled not guilty on all counts and received a jury trial. Mangialardi was represented by Alan A. Ackerman and Walter Jones at trial. The jury subsequently found Mangialardi guilty on all counts of the indictment. As a result of the jury's verdict, Mangialardi faced a potential sentence range of 210-360 months imprisonment. Following the filing of post-trial motions prepared by Mr. Ackerman, Mangialardi retained Jeffrey Steinback as defense counsel for the purpose of sentencing and appeal.

35

Prior to sentencing, the government and Mangialardi entered into a Presentence Agreement in which the government agreed to certain sentencing concessions in return for Mangialardi's waiver of certain post-trial rights. As a result of Mr. Steinback's negotiations with the government, Mangialardi's period of incarceration was substantially reduced. A provision in the Presentence Agreement provided that Mangialardi:

> waives all appellate issues that he could raise relating to the validity of his trial and conviction, but reserves the right to appeal the validity of his sentence. The defendant further waives the right to file any motion for new trial (pursuant to Fed.R.Crim.P. 33 or otherwise) or habeas corpus petition (pursuant to 18 U.S.C. § 2255 or otherwise) relating to the discovery of new evidence known to the defendant and/or his attorney as of the date of this agreement.

At the sentencing hearing, the terms of the Presentence Agreement and waiver provision were reviewed with Mangialardi. Mangialardi indicated that he had signed the Presentence Agreement and that it reflected his views. Furthermore, he indicated that he understood the terms of the Presentence Agreement and that he had reviewed it with his attorney. The Court then sentenced Mangialardi to a sentence of 125 months imprisonment on Counts One and Two; 125 months imprisonment on Counts Three, Four and Five; 120 months imprisonment on Counts Six, Seven, Eight and Fifteen; 36 months imprisonment on Counts Ten, Eleven, Twelve and Thirteen. The sentences on Counts Three through Thirteen and Fifteen were to run concurrent to the sentences on Counts One and Two.

While his habeas petition was pending, Mangialardi argued that he should be allowed, notwithstanding the waivers in the Presentence Agreement, to raise claims in his habeas petition based upon new law and new evidence discovered after the Presentence Agreement. Specifically, Mangialardi argued that the waivers do not apply to two specific claims–one based upon a change

2

in the law, United States v. Gaudin, 515 S.Ct. 506 (1995), and another based upon an affidavit he obtained from Raymond Cooper. He also argued that the waivers are invalid because they are ambiguous and because he did not enter into them knowingly and voluntarily.

In our July 10, 2000 Opinion we found that the waiver clauses in the Presentence Agreement were valid and unambiguous and that Mangialardi entered into the Presentence Agreement knowingly and voluntarily. We ruled that the waiver is limited to Mangialardi's right to pursue a direct appeal relating to his trial and conviction, his right to seek a new trial pursuant to Rule 33, and his right to seek habeas relief on evidence known to the defendant and/or his attorney as of the date of the Presentence Agreement. However, we determined that Mangialardi was not precluded from seeking § 2255 relief based upon new evidence discovered after the date of the Presentence Agreement, including possibly the Raymond Cooper affidavit.

In our Opinion, we also addressed the impact of Mangialardi's waiver on two specific habeas claims--Mangialardi's Gaudin claims and the Raymond Cooper affidavit. We concluded that Mangialardi unambiguously waived the ability to pursue his Gaudin claims. Specifically, we held that Mangialardi's Gaudin contention, that the Court had failed to instruct the jury as to the issue of materiality for his false tax return counts, was waived when Mangialardi waived "all appellate issues he could raise relating to the validity of his trial and conviction."

With respect to the Raymond Cooper affidavit, we held that Mangialardi "should have the opportunity to develop this argument in his habeas petition." We relied on the express language of the Presentence Agreement waiver and reasoned that Cooper's affidavit could constitute "new evidence which was not known to Mangialardi at the time of the Presentence Agreement."

3

Accordingly, we concluded that the Raymond Cooper affidavit "could possibly form the basis for habeas relief."

Mangialardi has now filed a position paper addressing the effect of the Court's ruling on his habeas filing. Mangialardi admits that the vast majority of his 27 habeas claims are barred by this Court's waiver ruling. Nevertheless, Mangialardi maintains that: 1) the Court should reconsider its July 10, 2000 ruling as it relates to his Gaudin claims, specifically claim numbers 1, 2, 9, and 26; 2) three other habeas claims remain viable notwithstanding the Court's ruling, specifically, claim numbers 5, 8 and 27; 3) these remaining and viable habeas claims require discovery so that Mangialardi can try to prove his innocence; and 4) this Court should release Mangialardi from jail.

## DISCUSSION

### I. Gaudin Claims

Mangialardi's Gaudin habeas claims break down into two general categories. First, Mangialardi maintains that in light of United States v. Gaudin, 515 U.S. 506 (1995), the Court committed a constitutional error in not instructing the jury on the issue of materiality for his false tax return counts. Second, Mangialardi contends that he received ineffective assistance of counsel from attorney Jeffrey Steinback because Steinback should have been aware of the Gaudin decision. Mangialardi claims that Steinback recommended that Mangialardi waive his materiality claim in order to obtain the government's sentencing concession through the Presentence Agreement and that such recommendation constitutes ineffective assistance of counsel.

We held in our July 10, 2000 ruling that Mangialardi knowingly and intelligently waived his materiality/Gaudin claim by agreeing to waive "all appellate issues he could raise relating to the validity of his trial and conviction." Mangialardi now asks this Court to reverse itself, claiming that

4

he did not knowingly and voluntarily enter into the Presentence Agreement because attorney Steinback was unfamiliar with the Gaudin decision. Mangialardi's Gaudin habeas claims should be rejected for several reasons.

First, Mangialardi has failed to establish any viable basis for this Court to reverse its prior ruling that Mangialardi made a knowing and intelligent waiver of his post-trial and appellate rights. This Court explicitly found that Mangialardi understood the terms of the Presentence Agreement, was afforded excellent counsel, and struck a very favorable deal in agreeing to the Presentence Agreement. Moreover, Mangialardi was clearly aware of the potential appellate issue regarding the Court's refusal to instruct the jury on materiality. It was these factors, among others, that lead us to conclude that the "record clearly demonstrates that the waiver provision of the Presentence Agreement was knowingly and voluntarily entered into by Mangialardi." Accordingly, because Mangialardi did enter into a knowing and intelligent waiver of his appellate rights, Mangialardi's substantive Gaudin claims should be rejected as waived.

Second, Mangialardi's conclusory contention that he did not voluntarily and knowingly enter into his Presentence Agreement because attorney Steinback was unfamiliar with the Gaudin decision should be rejected. Aside from failing to prove Steinback's lack of knowledge, Mangialardi cites no case law to support his novel argument that counsel's alleged lack of familiarity with case law surrounding a known appellate issue that defendant knows he is waiving somehow nullifies that defendant's appellate waiver.

Third, even if there were no valid waiver, Mangialardi's Gaudin claims would fail on their merits. Contrary to Mangialardi's contention in his habeas petition, the Court's failure to instruct the jury on materiality under Gaudin would not require reversal of his conviction on counts 9-12.

5

The Supreme Court held in Neder v. United States, 527 U.S. 1 (1999), that the Court's decision not to instruct the jury on materiality is subject to a harmless error standard of review. Id. at 4. A constitutional error is harmless when it appears "beyond a reasonable doubt that the error . . . did not contribute to the verdict obtained." Neder, 527 U.S. at 2.

In this case, the jury convicted Mangialardi of accepting substantial sums of money, approximately $10,000 per month from January 1987 through February 1989. No jury could have found that Mangialardi's failure to report this substantial income on his tax returns was not material. Therefore, the jury verdict would have been the same absent the error. Thus, the erroneous instruction is harmless and Mangialardi's substantive Gaudin claims (numbers 1 and 26) are denied because the failure to submit the materiality issue to the jury did not affect Mangialardi's conviction on Counts 9-12.

Finally, Mangialardi claims ineffective assistance of counsel due to attorney Steinback's alleged ignorance of the Gaudin decision. In order to make a claim for ineffective assistance of counsel, petitioner must establish that counsel's performance was deficient and that this "deficient performance" caused prejudice to the defendant. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In this case, Mangialardi has established neither element of the test for ineffective assistance of counsel. Thus, because Mangialardi has failed to properly develop his legal argument, it is rejected for this reason as well.

For these reasons, Mangialardi's habeas claims numbers 1, 2, 5, 8, 9, 26 and 27 are denied.

II. Claims #5 And 8 Are Barred By The Valid Waiver

Beyond his Gaudin and ineffective assistance habeas claims, Mangialardi maintains that his habeas claims #5 and 8 remain viable, notwithstanding the Court's July 2000 ruling. Mangialardi's

claim number 5 is that he was "unlawfully punished twice for several separate offense[s]" because this Court failed to "dismiss Counts 2, 3, 4, 5 and 13 as required." Again, Mangialardi's sole argument for why claim number 5 remains viable is that the claim "can only be waived knowingly and intelligently."

Mangialardi's conclusory argument in support of claim # 5 is without merit. Indeed, this Court explicitly rejected Mangialardi's very contention in its July 2000 ruling, and Mangialardi provides no basis for reversal now. We explicitly found that Mangialardi understood the terms of the Presentence Agreement, was afforded excellent counsel, and struck a very favorable deal in agreeing to the Presentence Agreement. Thus, we concluded that the "record clearly demonstrates that the waiver provision of the Presentence Agreement was knowingly and voluntarily entered into by Mangialardi." Therefore, Mangialardi's conclusory statement that he did not knowingly and intelligently waive his claim # 5 is denied.

Moreover, the meritless nature of Mangialardi's position that he did not knowingly and intelligently waive claim # 5 is demonstrated by his own admissions in his pro se habeas petition. In his habeas petition, Mangialardi admits that his trial counsel raised claim # 5 in five separate contexts: 1) in a pre-trial motion to strike counts 2, 3, 4, 5, 14 and 15; 2) in a Rule 29A motion; 3) in a motion for plenary consideration; 4) in Mangialardi's post-trial submission; and 5) in several conferences regarding jury instructions. Given Mangialardi's admitted knowledge of his trial counsel's arguments and the clear language of his agreement to "waive all appellate issues that he could raise relating to the validity of this trial and conviction," Mangialardi's purported ignorance regarding his waiver of claim #5 is baseless.

7

Mangialardi's habeas claim #8 fares no better. Mangialardi's claim # 8 is that he was denied his constitutional rights of due process and trial by jury when this Court failed to submit the issue of "interstate commerce" to the jury as an element of his 18 U.S.C. § 1951 count. Mangialardi argues that the Court should entertain this claim because "it involves <u>Gaudin</u>" and "because it also involves a Supreme Court decision rendered after the entry of the agreement, <u>Rutledge v. United States</u>, 134 L.Ed.2d 419 (1996)." To the extent that Mangialardi is relying on <u>Gaudin</u>, Mangialardi's claim is considered waived and is rejected for the above-stated reasons.

As for Mangialardi's reliance on <u>Rutledge</u>, this decision involves neither 18 U.S.C. § 1951 nor any issue involving interstate commerce. Mangialardi has not set forth a viable habeas claim by showing a denial of his constitutional rights in claim #8. For the foregoing reasons, Mangialardi's habeas claims # 5 and 8 are waived and also are substantively meritless.

III. <u>Discovery Requests</u>

Mangialardi contends that he should be allowed to pursue discovery in an attempt to prove his actual innocence. To obtain discovery in a § 2255 proceeding, the petitioner must first identify the essential elements of his constitutional claim. <u>Bracy v. Gramley</u>, 520 U.S. 899, 904-05. Only then, does the court address the issue of good cause. <u>Id</u>. at 905. In <u>Bracy</u>, the Court found good cause because the petitioner presented specific allegations giving "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate" the essential elements of his constitutional claim. <u>Id.</u> at 909.

Mangialardi's request for discovery is denied because he fails to satisfy this analytical framework. Nowhere does he identify the "essential elements" of any viable constitutional habeas claim for which he needs discovery. Indeed, even more fundamentally, Mangialardi has no viable

8

habeas claim. The only habeas claims that Mangialardi insists remain viable are not. As explained above, Mangialardi's habeas claims # 1, 2, 5, 8, 9, 26 and 27 are either waived through the Presentence Agreement or are substantively untenable as a legal matter. Because of these fundamental failures, Mangialardi has fallen far short of presenting specific allegations sufficient to show good cause for habeas discovery. For this reason alone, Mangialardi's discovery motion is denied.

Mangialardi's broader claim that he needs discovery to prove his actual innocence also is denied. Mangialardi identifies no constitutional claim that would entitle him to pursue such extraordinary habeas relief. Indeed, Mangialardi's claim of actual innocence amounts to nothing more than a sufficiency of the evidence argument, which he waived through his Presentence Agreement and which, in any event, cannot form a proper basis for habeas relief absent a showing of a constitutional violation. See Herrera v. Collins, 506 U.S. 390, 399-400 (1993). Accordingly, Mangialardi's request for discovery is denied.

IV. Raymond Cooper Affidavit

After further review, we find as a substantive matter that the Raymond Cooper affidavit cannot form a valid basis for habeas relief. Mangialardi's clear intent in filing the Raymond Cooper affidavit is to establish that Otis Moore lied at trial when he testified that he paid Mangialardi protection money.

Even if we were to assume that Moore did lie regarding this matter, it is well established that "the introduction of perjured testimony, without more, does not rise to the level of a constitutional violation warranting federal habeas relief." See, e.g., Shore v. Warden, 942 F.2d 1117, 1122 (7th Cir. 1991). "It is the knowing and intentional use of such testimony by the prosecuting authorities that

9

is a denial of due process of law." Shore, 942 F.2d at 1122. In this case, Mangialardi does not contend, nor does the record show, that the prosecutors knowingly or intentionally used perjured testimony in obtaining the conviction.

Mangialardi also attempts to use the Raymond Cooper affidavit to challenge his conviction based on the sufficiency of the evidence at trial. A defendant bears a heavy burden when he challenges his conviction based on the sufficiency of the evidence at trial. United States v. Aguilar, 948 F.2d 392, 395 (7th Cir. 1991). We must uphold the jury's verdict unless the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. United States v. Beverly, 913 F.2d 337, 360 (7th Cir. 1990), cert. denied, 112 S. Ct. 786 (1991).

In this case, we do not believe that Raymond Cooper testifying to the fact that, to his knowledge, Otis Moore never paid Sam Mangialardi any money would have made a difference in the outcome of the trial. The testimony at trial revealed that Otis Moore often met alone with Sam Mangialardi. The jury apparently concluded that money changed hands during these meetings, even though no one testified to seeing an exchange of money, so we do not believe that Raymond Cooper also testifying that he never saw money exchange hands would have changed the outcome of the trial.

The private meetings were not the only facts that the jury probably relied upon when concluding that Mangialardi had received payoffs from Moore. The jury found Mangialardi guilty of a series of other crimes committed to obtain money for Mangialardi by use of his police powers, so it was logical for the jury to conclude that he received money from Moore as well. Moreover, the testimony regarding Mangialardi's personal intervention to discourage Phillip Peebles from pressing

10

criminal charges against Moore after Moore shot him was powerful evidence of a close, supportive relationship between Moore and Mangialardi.

Accordingly, the jury's verdict is supported by ample evidence, making the Raymond Cooper affidavit legally insufficient to raise any viable habeas claim.

V. The "Hit" Evidence

Mangialardi claims that the government had information regarding a "hit" scheme on Mangialardi by Otis Moore, the key witness against him at trial. Mangialardi argues that the government did not disclose this information to the defense lawyers until Otis Moore was on the witness stand during the middle of the trial. Mangialardi claims that defense counsel had no opportunity to effectively cross-examine Moore with this information.

We reject Mangialardi's argument. The information in question was disclosed to Mangialardi's attorneys during trial. Therefore, Mangialardi waived this issue by entering into the Presentence Agreement pursuant to which he waived "all appellate issues that he could raise relating to the validity of his trial and conviction" and all habeas claims relating to "the discovery of new evidence known to the defendant and/or his attorney as of the date of this agreement." Since this information was disclosed during the trial, it was clearly known to Mangialardi or his attorney as of the date of the Presentence Agreement, and Mangialardi clearly waived this issue when he entered into the Presentence Agreement. Therefore, Mangialardi is not entitled to habeas relief on this claim.

VI. Release From Prison Request

Finally, Mangialardi asks this Court to either reduce his sentence and/or release him from prison while on bond. We have already denied a similar, previous request by Mangialardi for bond. Mangialardi's claim that his sentence should be reduced because of his "acceptance of

responsibility" is bewildering. Absolute and unqualified denial of guilt is the exact opposite of acceptance of responsibility. Accordingly, Mangialardi's request for early release and/or bond is denied for the reasons stated in our previous Opinion on this issue.

## CONCLUSION

For the foregoing reasons, we deny the position paper of petitioner Sam Mangialardi as to the issues remaining in his petition for habeas corpus. Therefore, Mangialardi's petition for writ of habeas corpus is denied. This is a final and appealable order.

*Wayne C____*
Wayne R. Andersen
United States District Judge

Dated: September 28, 2001